UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMPIRE FIRE AND MARINE INS. CO., an Illinois corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>GILBERT POGHOSYAN, an individual; SADAF SADEGHI, an individual; CESAR HILARIO PRADO BARRIOS, an individual; and DOES 1-100,<br><br>　　　　　　　　Defendants. | Case No. 2:23-cv-02403-SPG-MAR<br><br>**ORDER DENYING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT [ECF NOS. 23, 71]** |

　　　　Before the Court is Plaintiff Empire Fire and Marine Insurance Company's ("Plaintiff") Application for Default Judgment by Court. (ECF No. 71 ("Application")). Defendant Cesar Hilario Prado Barrios ("Barrios"), against whom Plaintiff seeks default judgment, has not opposed the Application, despite having previously participated in this case. *See, e.g.*, (ECF No. 46). The Court has read and considered the matters raised with respect to the Application and concluded that this matter is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered Plaintiff's submissions, the relevant law, and the record in this case, the Court DENIES Plaintiff's Application.

## I. BACKGROUND

The Court has previously discussed the factual background of this case at length. *See* (ECF Nos. 41, 51). As relevant to the instant Application, Plaintiff alleges that Barrios conspired with now-dismissed[1] Defendants Gilbert Poghosyan ("Poghosyan") and Sadaf Sadeghi ("Sadeghi") "to stage an automobile accident in order to submit a fraudulent insurance claim." (ECF No. 42 ("FAC") ¶ 7).

### A. Factual Background

On April 24, 2020, Barrios rented a car from Enterprise-Rent-A-Car Company of Los Angeles, LLC ("Enterprise") and acquired Supplemental Liability Protection ("SLP"), insured by Plaintiff, as part of this transaction. (*Id.* ¶¶ 8, 14). The rental had a return date of April 27, 2020, and the SLP was a high liability limits policy. (*Id.* ¶ 14). Barrios claims to have been involved in a car accident in Los Angeles on the evening of Sunday, April 26, 2020, in which he accidentally struck a Ferrari occupied by Poghosyan and Sadeghi with the rental car. (*Id.* ¶ 9, 14). None of the individuals involved called the police. (*Id.* ¶ 14). Instead, after exchanging information for five to ten minutes, each left the scene of the incident. (*Id.*).

Plaintiff's position on the crash is unclear. Plaintiff initially contends that no accident occurred and, if the rental car struck the Ferrari, "the collision was intentional by all three defendants." (*Id.* ¶ 9). The FAC also alleges that Barrios, Poghosyan, and Sadeghi were linked by a fourth individual named Levik Mirzakhanian or Levik Marcos ("Marcos") who owns an autobody shop. (*Id.* ¶ 7). According to the FAC, Marcos "recruited Poghosyan, Sadeghi[,] and Barrios to stage the accident and subsequent fraudulent insurance claim." (*Id.*). Later in the FAC, however, Plaintiff also asserts that "[i]t would have been possible for Poghosyan and Sadeghi to stage the accident without Barrios' participation." (*Id.* ¶ 13). Plaintiff explains that "any insurance settlement or judgment would be paid to Poghosyan and Sadeghi, not Barrios," and postulates that "Barrios would have no reason to intentionally stage the accident unless it was part of a fraudulent scheme

---

[1] *See* (ECF No. 53).

with Poghosyan and Sadeghi to share in the expected insurance settlement or judgment." (*Id.*).

### B. Procedural History

After the collision, Poghosyan and Sadeghi filed suit against Barrios in Los Angeles County Superior Court for their alleged damages. (*Id.* ¶ 10). Plaintiff defended Barrios in that action under a reservation of rights. (*Id.*). Because Barrios was insured under Plaintiff's policy, Plaintiff was entitled to (and did) take a recorded statement from Barrios at the beginning of the claims process. (*Id.* ¶ 11). Due to certain "red flags," Plaintiff subsequently elected to formally examine Barrios under oath. (*Id.*). The FAC identifies the following purported inconsistencies between Barrios's initial recorded statement and his testimony during the examination under oath:

- Explanations as to why he was at the location where the collision allegedly occurred:
    - Recorded Statement: Barrios was meeting with Marcos at a pool to deliver money to Marcos, as he did every week.
    - Examination Under Oath: Barrios was meeting with Marcos to deliver money owed for a truck repair and had never previously been to the location of the accident.
- Descriptions of his activities on the date of the incident:
    - Recorded Statement: Barrios had gone to pick up certain home appliances and went to church in Palmdale all day.
    - Examination Under Oath: Barrios picked up the appliances on Friday or Saturday and went to church on Sunday.
- Descriptions of the alleged collision:
    - Recorded Statement: The Ferrari came to a stop in front of Barrios and he could not avoid striking it.

   o Examination Under Oath: The Ferrari was stopped in the middle of the road with all its lights off and Barrios could not avoid it due to a curve in the road.

(*Id.*). The FAC also identifies the following alleged inconsistencies between Barrios's statements and certain evidence:

- Among other reasons for renting a car from Enterprise, Barrios claimed that his personal car was at home with a leak. Plaintiff alleges that "vehicle sighting search results" showed that this car was in fact parked at a business address and "was being driven around the city."
- Barrios could not provide a "credible reason" for having approximately 30 calls with Marcos, including on his wife's phone, on April 26, 2020, before and after the alleged collision.
- Unspecified inconsistencies between Barrios's description of his visibility before he purportedly struck the Ferrari and layout of the alleged collision site.

(*Id.*).

  Poghosyan and Sadeghi allegedly claimed to have stopped the Ferrari after encountering trash bags full of concrete in the middle of the road. (*Id.* ¶ 14). When asked about these bags, Barrios denied ever seeing them. (*Id.*). During his examination, Barrios also testified that, at some unspecified time after the alleged collision, he encountered Marcos at a construction disposal business which apparently disposes of concrete. (*Id.*).

  Plaintiff filed the initial Complaint in this action on March 31, 2023. (ECF No. 1). On May 19, 2023, Barrios answered the Complaint and filed a third-party complaint against Poghosyan, Sadeghi, and Marcos. (ECF Nos. 22, 23). On July 26, 2023, after the Court granted Poghosyan and Sadeghi's motion to dismiss the initial Complaint, Plaintiff filed the operative FAC, asserting claims for (1) declaratory relief; (2) fraud; and (3) unjust enrichment. (ECF Nos. 41, 42). Barrios answered the FAC on August 9, 2023. (ECF No. 46). On August 16, 2023, Poghosyan and Sadeghi again moved to dismiss. (ECF

No. 47). The Court granted their motion on September 14, 2023, (ECF No. 51), and Plaintiff filed a Notice of Dismissal against Poghosyan and Sadeghi on September 27, 2023, (ECF No. 53). On January 3, 2024, Poghosyan and Sadeghi dismissed their state court action against Plaintiff. (Appl. at 4).

Meanwhile, on October 25, 2023, Plaintiff began initiating default proceedings against Barrios. (ECF No. 57). The Court granted Plaintiff's request for entry of default on December 12, 2023, but provisionally denied Plaintiff's request to dismiss Barrios's third-party claims. (ECF No. 64). On January 23, 2023, the Court issued an Order to Show Cause for Barrios to show why his third-party complaint should not be dismissed for lack of prosecution. (ECF No. 65). Although the Order set February 6, 2024, as Barrios's deadline to file a response, as of the date of this Order, he has not done so.[2] On February 21, 2024, Plaintiff filed its first application for default judgment, (ECF No. 66), which the Court denied without prejudice due to certain procedural deficiencies, (ECF No. 70). On April 15, 2024, Plaintiff filed the instant Application. (Appl.). Barrios did not respond. Plaintiff filed a reply in support of its Application on May 8, 2024. (ECF No. 72).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) permits the Court to order default judgment following the entry of default by the Clerk of Court. Fed. R. Civ. P. 55(b). After the Clerk enters default, well-pleaded allegations in the complaint are generally accepted as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Allegations as to damages, however, must be proven. *Id.* To determine damages, a court may rely on declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). Additionally, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

---

[2] In light of Barrios's months-long failure to respond to the Order, the Court DISMISSES his third-party complaint without prejudice.

Before a court can enter a default judgment against a defendant, the plaintiff must comply with the procedural requirements set forth in Federal Rules 54(d) and 55, as well as those in Local Rule 55-1. Local Rule 55-1 requires the party moving for default judgment to submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the defaulting party was properly served with notice, if required under Federal Rule 55(b)(2). C.D. Cal. L.R. 55-1.

If these procedural requirements are satisfied, a district court may in its discretion enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default, however, "does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Instead, the court in its discretion considers several factors, colloquially known as the "*Eitel* factors." *Id.* These factors "include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III.   DISCUSSION

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court therefore begins with an examination of its jurisdiction.

### A.   Jurisdiction

#### 1.   Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Included in this limited jurisdiction are civil actions

1 arising between "citizens of a State and citizens or subjects of a foreign state" where the
2 amount in controversy "exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a)(2).
3 Diversity jurisdiction must be complete between the parties. *Strawbridge v. Curtiss*, 7 U.S.
4 267, 267 (1806); *Faysound Ltd. v. United Coconut Chems., Inc.*, 878 F.2d 290, 294 (9th
5 Cir. 1989). For the purposes of determining diversity jurisdiction, "[t]o be a citizen of a
6 state, a natural person must first be a citizen of the United States. The natural person's
7 state citizenship is then determined by her state of domicile, not her state of residence."
8 *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citation omitted).

Here, Plaintiff is an Illinois corporation with its principal place of business in Illinois. (FAC ¶ 2). Barrios, Sadeghi, and Poghosyan are all residents and citizens of California. (*Id.* ¶ 3). The amount in controversy exceeds $75,000. (*Id.* ¶¶ 1, 5). Accordingly, the Court has subject matter jurisdiction over Plaintiff's claims.

### 2. Personal Jurisdiction

Generally speaking, "[i]t is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." *Donell v. Keppers*, 835 F. Supp. 2d 871, 876 (S.D. Cal. 2011) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir.2001)). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts may be established via general jurisdiction or specific jurisdiction. Specific jurisdiction exists when the plaintiff's claims or causes of action "arise out of or relate to" the defendant's contacts with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). General jurisdiction exists only where the defendant's contacts with the forum state "are so 'continuous and systematic' as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For example, natural persons

are subject to general jurisdiction in their place of domicile. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 358 (2021). Here, because Barrios is a citizen of California, he is subject to general jurisdiction. Even if he were not subject to general jurisdiction, Barrios would also be subject to specific jurisdiction, because the purported collision from which this lawsuit arises occurred within California.

### B. Service of Process

Before entering a default judgment, courts must also assess whether the defendant or defendants were properly served with notice of the action. *See, e.g.*, *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). Federal Rule of Civil Procedure 4 governs service of the complaint and summons. Under Federal Rule of Civil Procedure 4(e)(2)(A), an individual may be served by delivery a copy of the summons and complaint to the individual personally. Here, Plaintiff's process server personally served Barrios with the Complaint on April 4, 2023, (ECF No. 11), which is proper service under Rule 4.

### C. Additional Procedural Requirements

Local Rule 55-1 requires the party moving for default judgment to submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the defaulting party was properly served with notice, if required under Federal Rule 55(b)(2). C.D. Cal. L.R. 55-1.

Plaintiff has satisfied these requirements by attaching its counsel's declaration to its Application. The declaration explains that Barrios's default was entered on December 12, 2023; that the default was entered on the FAC; that Barrios is not a minor or incompetent person; that the Servicemembers Civil Relief Act does not apply because Barrios has appeared in this action; and that Barrios received notice of the Application through the ECF system when Plaintiff filed the Application. (Appl. at 7). The Court concludes that Plaintiff has satisfied the procedural requirements of Federal Rule 55(b)(2) and of Local Rule 55-1.

D.  **Whether Plaintiff's Allegations Entitle It to Relief**

The second and third *Eitel* factors assess the merits of the claims of the moving party and the sufficiency of its pleadings. These two factors "require that a [movant] state a claim on which [it] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (internal quotation marks and citation omitted). Courts regularly analyze these factors together, *see id.*, and, when considering the merits and sufficiency of the moving party's claims, a court accepts as true all well-pleaded allegations regarding liability, *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Similarly, "[t]he fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010). "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). In contrast, where a moving party's complaint fails to state a claim, a district court may properly "declin[e] to enter a default judgment in [that party's] favor." *Aldabe*, 616 F.2d at 1092–93. *See also Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Here, Plaintiff seeks declaratory relief and monetary damages based on its claim for fraud. (Appl. at 5). Under California law, "[t]he elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). When a party pleads a cause of action sounding in fraud, it is subject to the heightened pleading requirements of Rule 9(b), which requires that a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Complaints involving allegations of fraud must, at minimum, include allegations demonstrating the "who, what, when, where, and how" of the misconduct alleged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (citation omitted), *superseded by statute on other grounds*. Where fraud claims implicate more than one defendant, a plaintiff may not

"lump multiple defendants together" but must instead "differentiate their allegations." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted). This heightened pleading standard applies where a party moves for default judgment on fraud claims. *5960 Bonsall, LLC v. Lanix Expl. Inc.*, No. CV 15-03628 MMM (PJWx), 2015 WL 12696201, at *6 (C.D. Cal. Oct. 15, 2015) (collecting cases); *N. Seattle Health Ctr. Corp. v. Allstate Fire & Cas. Ins. Co.*, No. C14-1680JLR, 2016 WL 4533055, at *3 (W.D. Wash. Jan. 27, 2016) (collecting cases). *See also In re Kubick*, 171 B.R. 658, 661 (B.A.P. 9th Cir. 1994) (holding that "[a] default judgment should be not entered on a complaint that fails to support a claim for relief" and evaluating fraud claim under Rule 9(b)).

Here, Plaintiff has failed to adequately allege what role Barrios played in the purported fraud. In fact, the FAC expressly contemplates that Poghosyan and Sadeghi could have "stage[d] the accident *without* Barrios' participation." (FAC ¶ 13 (emphasis added)). This concession alone is grounds to deny Plaintiff's Application. Additionally, as explained in the Court's prior orders granting Poghosyan and Sadeghi's motions to dismiss, the FAC's allegations lack the particularity required to support a claim for fraud against Barrios. *See* (ECF Nos. 41, 51). Plaintiff alleges that Barrios rented a car with a high liability limits policy. (FAC ¶¶ 8, 11). Plaintiff also alleges that Barrios claims to have collided with the Ferrari occupied by Poghosyan and Sadeghi. (*Id.* ¶ 9). But Plaintiff has not pleaded specific facts to support its general assertion that Barrios conspired with Poghosyan and Sadeghi to commit insurance fraud, or that the alleged scheme was "mastermind[ed]" by Marcos. (FAC ¶ 7). Instead, the FAC relies on innuendo and speculation. For example, Plaintiff asserts without any evidence that the SLP was "most likely inconsistent with [Barrios's] employment, income, and/or lifestyle." (FAC ¶ 14). Plaintiff also grasps to connect Barrios with the bags of concrete supposedly at the scene of the alleged collision, alleging that, at some unknown time after the incident, Barrios ran into Marcos at a construction disposal business. (*Id.*). Plaintiff also second-guesses Barrios's choice not to call the police after the alleged collision and casts aspersions on his veracity, questioning his reasons for driving to the site of the accident, for renting the car,

and for calling Marcos dozens of times on the day of the incident. (*Id.* ¶¶ 11, 14). Under Rule 9(b), however, Plaintiff must support its allegations of fraud with more than speculative assertions and insinuations.

Because Plaintiff has failed to state a claim against Barrios, the Court DENIES its Application for Default Judgment.[3]

### E. Leave to Amend

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009). In other words, courts should dismiss only those claims that "could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). This Court has twice granted motions to dismiss Plaintiff's claims for failure to meet Rule 9's heightened pleading standard. (ECF Nos. 41, 51). Because these motions were brought by Poghosyan and Sadeghi, however, the Court has not expressly addressed Plaintiff's allegations regarding Barrios before this Order. As it is not yet clear that amendment would be futile, the Court will grant Plaintiff one additional opportunity to cure the deficiencies identified in this Order.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Application is DENIED. If Plaintiff chooses, Plaintiff may file an amended complaint, consistent with this Order, within twenty-one (21)

---

[3] As Plaintiff's FAC fails to state a claim upon which relief may be granted, the Court in its discretion declines to analyze the other *Eitel* factors.

calendar days from the date of this order.  If an amended complaint is not filed within 21 days, the FAC will be dismissed without prejudice and this case will be closed.

**IT IS SO ORDERED.**

DATED:  June 27, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE